In the Matter of JULES H. BENDER, Petitioner, against THE PEOPLE OF THE STATE OF NEW YORK et al., Respondents.

Supreme Court, Special Term, Bronx County, July 30, 1952.

*William W. Conrad* and *A. Alfred Conrad* for petitioner.

*George B. De Luca, District Attorney* (*Edmund C. Farrell* of counsel), for respondents.

MATTHEW M. LEVY, J.   The petitioner, convicted of crime by the Court of Special Sessions in New York County, is a prisoner in the New York City Penitentiary at Riker's Island in The Bronx.   He applies (on notice to the District Attorneys of the Counties of New York and The Bronx, the commissioner of correction of the City of New York and the warden of the New York City Penitentiary) for leave to visit his personal dentist in Manhattan for dental treatment.   A prior application for similar relief was made to the sentencing tribunal, and there denied for lack of jurisdiction.

The petitioner alleges that the last molar on the upper right side of his mouth has been causing him acute pain and that he had consulted the prison dentist at Riker's Island.   This dentist diagnosed the condition as a cavity under the inlay of the molar.   To this tooth is attached a prong which connects with an upper

denture which the petitioner's private dentist had made for the patient's use. The petitioner claims that the prison dentist stated that he does not do such bridge work as might enable the denture to be saved, that he does not have the necessary equipment for this work, and that the only thing he could do would be to pull the molar. The prisoner objects to this removal because, as he claims, it would eliminate a natural tooth needed for mastication of food, would impair the effectiveness of his costly bridge, and would perhaps require the making of a new denture at substantial expense. Consequently, the prisoner's desire for resumption of care by his own dental expert at the latter's office.

The petitioner has asked, in the event his private dentist finds it necessary to see the patient several times for the required attention, that such visits too be allowed. The petitioner is willing to assume the entire expense of this procedure, including the cost of the dental treatment; and, recognizing that he must at all times be under prison supervision, he has offered to pay for the furnishing of the necessary guards to accompany him on his trips away from jail, and also for the meals and transportation incidental thereto.

The application is opposed by the District Attorney of the County of The Bronx, who urges that there is no warrant in law for the granting of the relief requested other than section 508 of the Correction Law, and that this section has not been complied with by the petitioner. This legislation, which is headed *" Removal of sick prisoners from jail "*, provides, in substance, that, if the jail physician and warden certify in writing that a prisoner " is in such a state of bodily health that he requires immediate medical or surgical treatment and that in their opinion he should be removed to a hospital for treatment," the judge to whom the application is presented must make an order directing the removal of the prisoner to a designated hospital, to be kept meanwhile in the custody of the jail officials; and that when " he has sufficiently recovered from his illness," the warden shall, upon notification accordingly by the chief officer of the hospital, return the prisoner to the jail; provided, however, that when the local authorities maintain a public general hospital containing a prison ward approved by the State Department of Correction, the sheriff may remove the sick prisoner to such hospital and effectuate his return when well, without the necessity of a judge's order.

The prisoner urges that he is not proceeding under any specific statute, section 508 or any other, and is relying upon the

general jurisdiction of the Supreme Court. The principal issues therefore are whether section 508 is or is not applicable to a situation like the present; whether, if applicable, its use is mandatory; and whether, absent the statute or proper compliance with it, the court can or should grant the relief requested.

Several contentions may be presented on petitioner's behalf in support of the inapplicability of the statute: Firstly, that " denture work " is not a matter of " medical or surgical treatment ". Secondly, that the section applies only to those emergency occasions involving the hurried removal of the prisoner from jail because of illness demanding prompt hospitalization. Thirdly, that when this statute is invoked, the seriously sick prisoner is actually removed from jail and put into a hospital — there to remain until he has sufficiently recovered — a matter of more or less extended duration — and therefore, it does not apply to sporadic, if repeated, absences from jail, as would be usually necessary for dental care or denture attention.

I disagree with these arguments, however persuasive they may appear to be at first blush. It is true, section 508 speaks of " medical and surgical treatment," and not specifically of dental care or related denture work and attention. And it speaks of hospitalization, which is normally of some duration, and is not ordinarily a concomitant of usual dental treatment. But I am of the view that denture work may properly be included in the generic term of " medical and surgical treatment." There are a number of known elements of " bodily health " recognizably affected by services professionally rendered by dental mechanics in conjunction with dentists, orthodontists, oral surgeons, and the like. Moreover, let us for a moment consider a prisoner who requires not denture services but other mechanical aid or attention. Suppose he had to be fitted with braces or other artificial devices to assist locomotion? Suppose it were deemed medically necessary to have roentgenological photographs taken? Suppose it were necessary to correct his vision by the use of certain types of glasses? Suppose that X-ray therapy is indicated? Suppose a multitudinous number of other cases which come to mind (and not here necessary to enumerate) where related medical and mechanical attention is required — for making, fitting, adjusting, and testing. Certainly, in this advanced age of great inventions and helpful improvements, all calculated to better human health, it must be recognized that body and device may be so connected as to warrant the interrelated attention to both as coming within the term of " medical treatment."

Nor does it seem to me to make any difference that the services thus to be rendered are not of a continuous or prolonged, as distinguished from an intermittent or repeated, nature. Certainly, if a prison's scientific facilities do not enable its medical staff adequately to conduct physical examinations or make accepted diagnostic tests, or construct and fit needed mechanical devices — all concededly being " required " " immediately " — removal of the prisoner to a modern hospital of adequate technological capacities for such purposes should not be thwarted merely because the required visit will be for several hours only. Neither the want for, nor the success of, medical science is necessarily measured by the length of the time of treatment.

If the prison authorities, custodial and medical, unite in their certification, can it be reasonably urged that this section does not warrant a judge's action, or, on the basis of the proviso (heretofore mentioned and added to the section in 1946), does not warrant action by the sheriff without the necessity of prior judicial approval? I think the question answers itself. I would construe this section on the thesis of its general humane and beneficent intent, rather than require the judge to render himself powerless at the very time when emergent need demands immediate attention and proper relief. I conceive that this legislation should be held to apply in its broadest possible fashion to give a prisoner the urgently needed medical attention in whatever aspect that care might be required. My opinion is that the statute should not be so construed as narrowly to limit its application to those instances requiring either direct bodily treatment or prolonged in-patient care.

Since I have held that the Correction Law provides adequate means for the accomplishment of the prisoner's desires, it is perhaps unnecessary for me to determine now whether this court can or may act dehors the statute. But if I am in error in this matter of broad statutory construction, I want to say that, in my view, the Supreme Court does have inherent power and constitutional competence to act in the premises on the basis of its general equitable jurisdiction (N. Y. Const., art. VI, § 1; Civ. Prac. Act, § 64), and I should not hesitate to so hold. Section 508 does not require that the order of removal from jail to hospital be applied for on notice or in court. Authority and direction are given to the judge to act out of court and without notice (see 1 Carmody on New York Practice [Perm. ed.], §§ 352–354, and Carmody's Manual of New York Civil Practice [Carr, Finn and Saxe ed.], §§ 86–87). That does not impinge upon the court's

power as such, for what a judge may do out of court, the court may do in formal session; and here the petitioner has not proceeded ex parte or on the basis of a judge's proposed order, but at a Special Term of court, by way of petition on due notice to all necessary and proper parties. The application is properly before the court under the Correction Law. And I shall assume that by way of appropriate action or special proceeding the court has jurisdiction without reliance upon section 508.

Such ruling, however, is of no avail to the present petitioner on the instant application, for, if it be assumed that the prisoner may, in a proper case, proceed in the Supreme Court by way of the institution of an action or a special proceeding and obtain the relief here requested, I think nevertheless that, in the exercise of that jurisdiction, and as a matter of appropriate discretion, I should not ignore the legislative policy as indicated in the statute. That policy, as I see it, imposes certain proper controls before a prisoner may, even temporarily, enjoy some of the privileges of a free person.

Presented to me on this application is the affidavit only of the attorney for the petitioner — the latter's statements come to the court by way of hearsay. Nor is there any affidavit from the prisoner's personal dentist — from whom I might have the benefit of some expert opinion on the need, the emergency, the care. There is no certificate from the jail physician that the prisoner requires immediate attention. Nor is there any certificate to that effect from the jail dentist, nor to the effect that he is unable to render the needed attention. There is no statement on the subject from the warden. And there is no claim that these officials have refused certification as to the facts.

The District Attorney points out that Bellevue Hospital is a public general hospital in the city of New York, that it contains a prison ward approved by the State Department of Correction, that the inmate could there receive adequate dental treatment, and that under section 508 of the Correction Law, the warden of the New York City Penitentiary may cause the prisoner's transfer to Bellevue Hospital without an order of a judge or the court. If there were proof before me (which there is not) in a proper action or proceeding that there is no city dentist at this or a similar hospital capable of attending to the needs of the petitioner, I might, in the exercise of appropriate discretion — and with proper safeguards and under certain conditions — permit his personal dentist to treat the prisoner at the jail or at the hospital or elsewhere.

The motion is denied on the present papers. If this prisoner were to succeed here, without presenting clear and convincing proof as to the urgent necessity for the emergent treatment away from jail, thus asked for by him, I can see where the court might be taxed with cavalier applications for similar relief by convicted criminals who are somewhat impatient of lawful restraint. While the court may be relied upon to see that a prison inmate receives proper care at all times, it should not be expected to sanction unneeded outside jaunts. With that in mind, I cannot encourage the easy procedure here adopted by the present petitioner, perhaps in the hopeful expectation that an expedition or two away from jail might break the monotony or the rigors of his incarceration.