532 P.2d 541

**Susan L. KAHN (Shechter), Appellant,**

v.

**Michael P. KAHN, Appellee.**

**No. 2 CA–CIV 1719.**

Court of Appeals of Arizona, Division 2.

March 11, 1975.

Rehearing Denied April 8, 1975.

Review Denied May 13, 1975.

Rabinovitz, Minker & Dix, P. C. by S. Jeffrey Minker, Tucson, for appellant.

Miller, Pitt & Feldman, P. C. by Jeffrey H. Schwartz, Tucson, for appellee.

### OPINION

HOWARD, Chief Judge.

This is an appeal from an order of the superior court modifying a 1966 divorce decree. Appellant challenges that part of the order which denies her recovery of child support arrearages, monies paid to a psychiatric social worker, attorneys' fees and certain other expenses.

The decree of divorce incorporated a separation agreement signed by the parties on the 20th day of January, 1966.

On August 31, 1972, appellant filed an order to show cause in the State of New York seeking a modification of the property settlement agreement and the decree of divorce and further seeking payment of medical expenses and arrearages for child support. After some legal sparring, appellant discontinued the litigation in the State of New York and filed an order to show cause in Pima County seeking much of the relief requested in the New York action. In addition appellant requested that appellee have custody of the minor children whose custody had been awarded to her in the divorce action.

The change of custody question was heard separately and on September 10, 1973, the court entered an order changing the custody of the children from appellant to appellee.

The other matters were heard on January 24, 1974, after which the court ordered, inter alia, that appellee pay certain past due expenses to which appellant was entitled under the divorce decree and, pursuant to appellee's stipulation, other expenses which were due and unpaid. However, the trial court found that appellee was in substantial compliance with the spirit and intent of the child support obligation and thus did not order payment of child support arrearages. The trial court neither awarded appellant attorneys' fees and expenses incurred in the prosecution of the order to show cause nor did it order payment of the expense of a psychiatric social worker.

## CHILD SUPPORT ARREARAGES

The separation agreement and the decree of the court in 1966 awarded appellant legal custody of the minor children of the parties, Jody, Lilyan and Morton, and gave appellee in addition to visitation rights, temporary custody of the children for a period of not to exceed six weeks during the summer. In the summer of 1968, the parties agreed that after the summer visitation the children would remain with appellee for the entire school year. At the end of the school year, the children returned to live with their mother in New York. In September of 1973, the parties agreed that Lilyan could return to live with her father and thereafter remain with him permanently.

In the summer of 1972, Jody and Lilyan joined their father for a trip to Israel and Morton attended a camp at his father's expense.

It was appellee's position in the trial court that the parties had agreed (1) to reduce the child support payments from $500 per month to $200 per month during the summer vacation when the children spent a substantial period of time with him and (2) that when Lilyan came to live with him, the child support payments would be reduced by one-third. This evidence was sharply disputed by appellant.

It is appellant's contention that under the authority of Baures v. Baures, 13 Ariz. App. 515, 478 P.2d 130 (1970), the court erred in not granting her the child support arrearages. We do not agree. In Baures v. Baures, supra, the husband *unilaterally* discontinued child support payments while the child was in his custody. We held that such unilateral action was ineffectual in the face of a court order for child support payments. However, we also stated in *Baures*:

> "We can conceive of situations where the circumstances will support a finding of express or implied consent on the part of the mother to a mode of payment other than that called for in the decree." 13 Ariz.App. at 519, 478 P.2d at 134.

The evidence was in conflict in this case as to whether such an agreement existed between the parties. It was therefore a question for the trial court to resolve and we shall not disturb its evaluation of the evidence.

## ATTORNEYS' FEES AND EXPENSES

At the hearing below the parties stipulated that the court determine the reasonable value of the services of appellant's Arizona counsel provided counsel submitted a certified statement of his hourly services and a breakdown of what those services were. It was made clear to the court, however, that appellee in so stipulating was not conceding he was responsible for the payment of such fees. Appellant submitted to the court a statement of attorneys' fees in the sum of $4,040 for Arizona counsel, court costs in the sum of $1,883.18, attorneys' fees incurred in the State of New York in the sum of $1,111.12 and a rent statement of $209.72 from the Chateau Apartments for the five days appellant was required to be in Tucson.

A.R.S. § 25–324 provides:

"The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter. For the purpose of this section costs and expenses may include attorney's fees, deposition costs and such other reasonable expenses as the court finds necessary to the full and proper presentation of the action. . . ."

Appellant testified that she had no funds of her own to support the children while they are on visitation during Christmas, Passover and part of the summer. Coupled with her testimony that she had no "separate funds" to pay for an attorney, we believe the fair import of her testimony to be that she did not have funds to pay her attorney.

■ As for the attorneys' fees incurred in New York, assuming, but not deciding, that appellant could recover such fees, we find the record bare of any foundation as to their reasonableness. Although appellant would have been entitled to the traveling expenses and housing in Tucson necessitated by this action, said expenses were not introduced into evidence nor did appellee stipulate that the court may consider them.

Appellee's ability to pay the fees was not in issue. Under the parties' stipulation the only issue was whether appellant was "entitled" to the fees.

■ The trial court did not err in denying appellant's request for payment of the New York attorneys' nor did it err in denying her travel and apartment expenses. However, it did err in not granting payment of her Arizona attorneys' fees in the sum of $4,040.

## MEDICAL EXPENSES

■ The separation agreement approved and ratified by the court in the final decree of divorce contained the following provision:

"The Husband agrees to pay for the cost of any unusual or extraordinary medical or dental expenses incurred for and on behalf of the minor children. The parties agree that any medical or dental expense of $100.00 or more per child shall be deemed to be an 'unusual or extraordinary medical or dental expense' as the phrase is herein employed."

In 1970, the then nine year-old child, Morton, was living in New York with his mother and her new husband. Because of the child's apparent emotional problems the mother took him to see a clinical psychologist, Dr. Leah Levinger. After performing several tests Dr. Levinger made the following diagnosis and prognosis:

"This study showed a bright child who, however, had severe emotional problems. He had some confusions in his thinking and unusual ways of expressing himself. He had trouble distinguishing fantasy from reality. There were great difficulties in emotional control. Findings indicated that this boy had a poor prognosis for functioning effectively either socially or academically unless these problems were ameliorated through psychological help."

Dr. Levinger recommended that the child see either a psychiatrist or a psychiatric social worker. The psychiatric social worker she recommended was Mrs. Clara Harari. The treatment with Mrs. Harari was for an extended period of time and included consultations with appellee and family consultations with appellant and her husband. The total amount of Mrs. Harari's bill was $7,630, $530 of which was paid from a health and accident insurance policy required by the separation agreement to be maintained by appellee. The bill also included the sum of $630 for consultations with the minor child, Jody. Mrs. Harari has a master's degree from Columbia University, and she and her husband operate a community consultation service in New York City. She has had special training as a psychotherapist and has been working as such for 20 years.

The record indicates that Morton's treatment by Mrs. Harari was reasonable and necessary. Further, there is no evidence that Mrs. Harari was not competent to undertake the treatment being considered. In fact, Dr. David Gurland, a psychiatrist practicing in the City of Tucson testified that a trained psychiatric social worker was perfectly competent to undertake treatment for the problems diagnosed by Dr. Levinger.

It is appellee's position that since Mrs. Harari was not a medical doctor and since no medical doctor recommended Morton to her for treatment, the expenses incurred for Morton's treatment were not "medical expenses" under the separation agreement. We do not agree. It is clear from the terms of the agreement that the parties intended appellee to be responsible for any health problems that might arise concerning his children. In Beaugureau v. Beaugureau, 11 Ariz.App. 234, 463 P.2d 540 (1970), we noted the broad meaning given to the term "medical expense" when included in property settlement agreements. We also feel that the case of Davis v. Davis, 8 Mich.App. 104, 153 N.W.2d 879 (1967), lends further support for the proposition that the term "medical expense" did include expenses for attending to mental as well as physical ailments. In that case the court noted that the judgment for divorce made no provision for medical, hospital or dental expenses yet it held the husband responsible for the expenses of a clinical psychologist stating:

"In this day and age, it is becoming a firm belief that concern for a child's mental health is equally as important as the necessities of food, shelter, physical health, and clothing. The proper care and maintenance of the minor daughter of the parties include tending to her emotional and psychological problems as well as to her physical problems." 153 N.W.2d at 881.

It is our opinion that the court erred in not granting to appellant the expenses of Mrs. Harari's services in the sum of $6,470 for the treatment of Morton.

As for her treatment of Jody, the record is bare of any evidence that such treatment was necessary.

The order and judgment of the trial court is affirmed in all respects except as to the denial of (1) Mrs. Harari's expenses in the sum of $6,470 and (2) attorneys' fees in the sum of $4,040.

The trial court is directed to amend its order to allow appellant the foregoing sums.

KRUCKER and HATHAWAY, JJ., concur.