Francis CEDERGREEN, Appellant,

v.

Sharon K. CEDERGREEN, now known
as Sharon K. Bushue, Appellee.

No. S–3513.

Supreme Court of Alaska.

May 24, 1991.

William M. Bankston, Bankston & McCollum, Anchorage, for appellant.

Vincent Vitale, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Sharon Bushue, formerly Sharon Cedergreen, and Francis Cedergreen were married on November 30, 1963. They had two children, Shannon, born in December 1969, and Renee, born in August 1972. The couple eventually divorced, and their divorce decree was entered on October 24, 1979. The decree incorporated a property settlement and child custody agreement ("Agreement").

The Agreement contained various provisions. This controversy centers around paragraph six of the Agreement, and the

amount of money Francis now owes Sharon for his daughters' health care. Paragraph six of the Agreement states,

*Medical and dental expenses of children.* The parties agree that if either party can obtain a medical health policy covering medical and dental expenses for the above-named minor children through their employment then they shall do so. If such medical insurance is not available, however, the parties agree that the husband shall be responsible for purchasing medical and dental insurance. If the policy is purchased by the husband, it shall contain provisions which will enable the wife to make application directly to the insuring company for a direct payment or reimbursement as the case may be of medical and dental expenses incurred by the wife on behalf of the children.

If the medical and dental expense of the children exceed the coverage provided by any or all insurance policies, the husband agrees to pay the amount by which medical and dental expense shall exceed the limits of the policies.

Shannon and Renee have received dental and medical care both within and outside of Alaska. Sharon has had to pay travel expenses relating to Shannon's counseling and Renee's arthritis treatment. These expenses included airfare, car rental, and hotel expenses, which Sharon claimed as medical expenses, asserting that all claimed expenses were related to the care the girls received.[1]

On March 24, 1988, Sharon filed a motion in superior court for entry of judgment against Francis for unpaid health care expenses. The motion requested a principal amount of $14,527.07, plus prejudgment interest and attorney's fees.

Thereafter, Francis requested a trial so that testimony could be heard concerning the nature of the care provided. At trial, Francis claimed he owed only $6,213.67.

The superior court entered a judgment for Sharon in the amount of $35,479.89. It was composed of a principal amount of

---

1. Both Shannon and Renee wear contact lenses. Both have also worn braces.

$22,781.20, prejudgment interest through April 30, 1989 of $8,478.69, costs of $220, and attorney's fees totalling $4,000. This appeal followed.

## I. COULD SHARON INSTITUTE THIS PROCEEDING BY FILING A MOTION FOR ENTRY OF JUDGMENT FOR UNPAID HEALTH CARE EXPENSES? [2]

On appeal, Francis characterizes Sharon's motion as a motion for reconsideration. He contends that the superior court could not grant Sharon's motion because it did not meet the requirements of AS 25.24.-170 for a motion for reconsideration of a divorce judgment. He also argues that the award of medical expenses should be classified as property, and that Sharon is required to file a lawsuit, rather than a motion, to enforce a divorce decree. Sharon responds that the contract claim for reimbursement merged into the divorce decree and therefore was enforceable by motion. She emphasizes that the medical and dental expenses are analogous to child support and should be enforced in the same manner as child support. We are persuaded that Francis's contentions lack merit.

Contrary to Francis's assertion, Sharon's motion was not for reconsideration pursuant to AS 25.24.170. Rather, she brought the motion to enforce the judgment. The superior court has inherent power, and also the duty, to enforce its divorce decrees. *Johnson v. Johnson*, 544 P.2d 65, 72 (Alaska 1975) (citing *Goodsell v. Goodsell*, 38 Wash.2d 135, 228 P.2d 155 (1951)). Here the superior court was enforcing its final decree since the parties' settlement was explicitly merged into its decree.

## II. WAS SHARON'S MOTION PROCEDURALLY DEFECTIVE?

Francis claims that Sharon's motion was deficient because it failed to state its asserted grounds for relief with particulari-

ty, and it lacked a sufficient supporting memorandum pursuant to Civil Rule 77(b)(1), (2). We reject these claims.

Sharon's motion did set forth the amount prayed for, as well as the relevant provision in the Agreement entitling her to that amount. Moreover, her memorandum in support of the motion for entry of judgment for unpaid health care expenses, filed the same day as her motion, as well as her affidavit, provided information sufficient to satisfy Civil Rule 77(b)(2).

## III. WAS SHARON'S CLAIM, EITHER IN WHOLE OR IN PART, BARRED BY THE STATUTE OF LIMITATIONS?

Francis asserts that Sharon's action is governed by contract law and therefore the six year contract statute of limitations applies, that this litigation cannot be characterized as an action on a judgment since the meaning of paragraph six of the Agreement is in dispute, and that he was denied the opportunity to show that his interpretation was correct. Francis also argues that AS 09.10.040 mandates that an "action" be instituted if the ten year statute of limitations is to apply.

The superior court held that the ten year period of AS 09.10.040 governed. We affirm.

AS 09.10.040 explicitly states that an action upon a "decree," as well as a judgment, must be brought within ten years. We have applied this statute when a party seeks to recover child support arrearage. *Young v. Williams*, 583 P.2d 201, 205 (Alaska 1978). Francis attempts to distinguish *Young* by contending that while a requirement for child support payments is not open to interpretation, a provision for medical and dental expenses is open to interpretation. Yet even in *Young*, the superior court had to decide whether certain payments made by Young to his son

---

**2.** The parties agree that the clearly erroneous standard of review applies for factual findings. *Mathis v. Meyeres*, 574 P.2d 447, 449 (Alaska 1978). "In determining if a mistake has been made, the court must take the view of the evidence most favorable to the prevailing party."

*Id.* (citations omitted). The parties also agree that this court should use its independent judgment for questions involving the legal interpretation of the property settlement and child custody agreement. *Walsh v. Emerick*, 611 P.2d 28, 30 (Alaska 1980).

constituted child support. *Id.* at 203. We discern no basis for treating the case at bar differently.[3]

## IV. DID THE SUPERIOR COURT ERR IN INTERPRETING THE PROPERTY SETTLEMENT AND CHILD CUSTODY AGREEMENT?

### A. *The Insurance Requirement*

■ Francis argues that $5,231.00 was awarded erroneously for instances when no claim was made to either his or Sharon's insurance company as required by the Agreement, that $660.23 was awarded erroneously for instances where Sharon filed on Francis's insurance but not her own, that $182.28 was awarded erroneously as Sharon failed to file a claim when Francis had insurance, and that another $3,784.46 was due Francis in credit.

As to the allegation that Sharon failed to file claims when Francis had insurance, the superior court found,

Mr. Cedergreen also asserted that Sharon Bushue should be denied some claims because she failed to submit them when he had insurance in effect on the children. This assertion is rejected. Although Mr. Cedergreen had control of the insurance documents necessary to prove his claim, he failed to produce those documents. Thus, he failed to prove that such insurance was in effect or that there would have been coverage if claims had been submitted. Additionally, in several instances it was demonstrated by Sharon Bushue that Mr. Cedergreen *did not* have coverage on at least one of the minor children. To the

extent that his proof depended upon his credibility, his proof failed as I find him not to be a credible witness.[4]

The superior court's finding is supported by the record.

■ As to the amounts Francis claims he should have been credited, the superior court said,

Mr. Cedergreen asserted that he made certain payments for which he should have received credits. This claim amounted to the affirmative defense of offset and payment. Hence, he bore the burden of proof in establishing his payment of certain expenses. He failed to meet that burden of proof.

Again, this finding is amply supported in the record. Overall, as to the specific amounts in dispute, we conclude that the superior court's findings were not clearly erroneous.

### B. *Medical and Dental Expenses*

The superior court gave the terms "medical and dental expenses" in the Agreement a "broad, inclusive meaning." It concluded that neither the history of the Agreement nor public policy necessitated a restrictive meaning. The superior court determined that "medical and dental" expenses are "inclusive terms for health-related costs," including expenses for counseling, contact lenses, airfare and travel related to treatment. We are not persuaded that the superior court's construction is erroneous.

Other courts have adopted a board reading of the term medical expense. For example, the Court of Appeals of Arizona notes the "broad meaning given to the term 'medical expense' when included in

---

**3.** Francis also advances the contention that an "action," not a motion, is required to invoke the ten year statute of limitations as opposed to the six year statute of limitations. However, AS 09.10.050, the six year statute of limitations, also requires "an action." As discussed above, a motion is an appropriate action to enforce a judgment or decree.

**4.** While Sharon did not submit bills to Francis for about two years, Francis either indicated his disagreement with the expenses or Sharon knew he lacked insurance. In this regard, the superior court found,

The record discloses that in the first few years after the 1979 divorce, Sharon Bushue sub-

mitted bills to Mr. Cedergreen. He was uncooperative and inefficient in responding to her requests. Moreover, at trial he confirmed her testimony that he would not pay bills for medical care if he did not approve of the medical treatment. He specifically told Ms. Bushue that he did not approve of the [sic] Renee's treatment for arthritis and Shannon's treatment for drug and alcohol abuse. He also testified that he thought Ms. Bushue "used counseling too much." Sharon Bushue was justified in her belief that it was futile to submit the bills to Mr. Cedergreen.

property settlement agreements." *Kahn v. Kahn*, 23 Ariz.App. 269, 532 P.2d 541, 545 (1975). "The expression medical expense has been given a broad, comprehensive meaning by some courts so as to include eye examination and the cost of eyeglasses prescribed and denture work." *Beaugureau v. Beaugureau*, 11 Ariz.App. 234, 463 P.2d 540, 542 n. 1 (1970) (citing *Jones v. Jones*, 116 Cal.App.2d 604, 254 P.2d 67 (1953) and *Bender v. People*, 203 Misc. 627, 115 N.Y.S.2d 810 (Sup.Ct.1952)).[5]

### 1. Counseling

■ Medical expenses have been held to include expenses for mental as well as physical ailments. The term has been held to include a psychiatric social worker, even if not recommended by a medical doctor. *Kahn*, 532 P.2d at 545. In *Davis v. Davis*, 8 Mich.App. 104, 153 N.W.2d 879, 881 (1967), the expenses of a clinical psychologist were included in the term. The court explained,

> In this day and age, it is becoming a firm belief that concern for a child's mental health is equally as important as the necessities of food, shelter, physical health, and clothing. The proper care and maintenance of the minor daughter of the parties include tending to her emotional and psychological problems as well as to her physical problems.[6]

In short, we affirm the superior court's ruling that mental health counseling is included in the meaning of medical expenses.

### 2. Travel Expenses

■ Francis claims these expenses were not reasonable or necessary. Evidence existed that the travel costs incurred were both necessary and reasonable in connection with the children's treatment. Francis does not deny these expenses were actually incurred. Thus, we hold that the superior court did not err in this aspect of its judgment.

### 3. Contact Lenses

■ Francis classified the $854.90 for contacts as an "unnecessary luxury," yet, the superior court found that "for the average middle-class teenager it's reasonable medical expenses to secure contact lenses for them." In the context of this record, we cannot say that the superior court erred in concluding that contact lenses were a proper medical expense.

### 4. Braces

■ We find no error in the superior court's determination that braces were a necessary expense and that braces are included in dental expenses. As the court in *Robinson v. Robinson*, 134 Misc.2d 664, 512 N.Y.S.2d 315, 320 n. 1 (Sup.Ct.1987), explained, "orthodonture is merely a specialty of dentistry, the same as neurology

---

5. Francis emphasizes that the cases, and in particular *Kahn*, require specific language that "unusual or extraordinary" expenses are covered. Yet, as the provision in *Kahn* recognizes, "unusual or extraordinary" refers to an amount of money; the key term to be interpreted is "medical or dental expenses."

6. *See also In re Marriage of Morrisroe*, 155 Ill. App.3d 765, 108 Ill.Dec. 303, 309, 508 N.E.2d 464, 470 (1987) (psychotherapist and orthodontist expenses must be paid by respondent who had agreed to pay for all extraordinary medical expenses); *cf. Lopez v. Blue Cross of Louisiana*, 386 So.2d 697 (La.App.1980) (four week hospitalization of insured for depressive mental neurosis was medically necessary and therefore covered under the insured's health insurance policy), *aff'd in relevant part*, 397 So.2d 1343 (La.1981). *But see Wimpey v. Pope*, 246 Ga. 545, 272 S.E.2d 278, 279–80 (1980) (agreement that ex-husband was to pay half of children's medical bills did not include treatment by psychologist although it would include treatment by a psychiatrist); *Robinson v. Robinson*, 134 Misc.2d 664, 512 N.Y.S.2d 315, 320, 322 (Sup.Ct. 1987) (cost of counseling and private school not reimbursable as "reasonable and necessary" medical expenses, but might be reimbursable as elements of support).

In addition, AS 08.64.380(7)(A) defines the "practice of medicine" or the "practice of osteopathy" as

> for a fee, donation or other consideration, to diagnose, treat, operate on, prescribe for, or administer to, any human ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other *mental or physical condition;* or to attempt to perform or represent that a person is authorized to perform any of the acts set out in this subparagraph....

(Emphasis added).

is a specialty included within the definition of the practice of medicine." Various cases hold that this expense is included in dental care. *See Blisset v. Blisset,* 123 Ill.2d 161, 121 Ill.Dec. 931, 936, 526 N.E.2d 125, 130 (1988); *La Scala v. La Scala,* 73 A.D.2d 1068, 422 N.Y.S.2d 229 (1979); *Callen v. Callen,* 257 Ala. 226, 58 So.2d 462, 464–65 (1952); *Kuespert v. Roland,* 222 Ark. 153, 257 S.W.2d 562, 563 (1953); *Grobleski v. Grobleski,* 408 So.2d 693, 694 (Fla. App.1982). AS 08.36.360 defines the practice of dentistry as including one who "diagnoses, treats, operates on, corrects, attempts to correct, or prescribes for ... malposition of the human teeth."

### C. *Expenses After Shannon Turned Eighteen*

 Francis claims that $89 was erroneously awarded for expenses for Shannon the day after she turned eighteen. Counsel for Sharon concedes that this award was erroneous.

## V. DID THE SUPERIOR COURT ERR IN ITS PREJUDGMENT INTEREST CALCULATION?

 The superior court awarded Sharon prejudgment interest at the rate of 10.5% per annum, which totalled $8,478.69 through April 10, 1989. Francis argues that interest should have been calculated from the end of the first year in which the money was due, not the beginning. Counsel for Sharon does not dispute this specific point.[7]

AFFIRMED in part and REMANDED in part for redetermination of prejudgment interest and the striking of $89.00 from the award.

7. Francis also argues that prejudgment interest should not have been awarded because he had no notice that he was in breach. He claims that he "was not sent any of the billings nor was any request made to comply with paragraph 6 of the Agreement from the time the expenses were incurred through 1988." The record clearly indicates that Sharon repeatedly tried to obtain compensation from Francis for the expenses incurred, and when she stopped, it was because of Francis's bad faith. Moreover, "the real question" is whether Francis had use of money for a period of time when Sharon was actually entitled to it. *Farnsworth v. Steiner,* 638 P.2d 181, 185 (Alaska 1981). Simply, "[t]he purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment." *Bevins v. Peoples Bank & Trust Co.,* 671 P.2d 875, 881 (Alaska 1983).