## SANDRA CARLSON BUCY *v.* PAUL C. BUCY
### (8480)

DUPONT, C. J., SPALLONE and NORCOTT, Js.

Argued June 6—decision released September 4, 1990

*Paul C. Bucy,* pro se, the appellant (defendant).

*Sandra Carlson,* pro se, the appellee (plaintiff).

*Alfred J. Garofolo* filed a brief for The Connecticut Psychological Association, Inc., as amicus curiae.

*Clifford D. Stromberg, Jeffrey G. Schneider, Richard F. Orr,* and *Susan A. Quinn* filed a brief for The American Psychological Association as amicus curiae.

NORCOTT, J. This appeal arises from the trial court's partial grant of the plaintiff's postjudgment motion for contempt and for the reimbursement of expenses. The defendant appeals from the trial court's order that he must pay for psychological services rendered to his daughter, claiming that the trial court's postjudgment ruling incorrectly interpreted the dissolution decree as creating that obligation. He further claims that the trial court should not have ordered him to pay attorney's fees to the plaintiff.

The parties' marriage was dissolved in September, 1978. The dissolution decree contained a provision obligating the defendant to pay "all medical, dental, and orthodontia expenses for the children not covered by insurance and in excess of $100.00 per child per year . . . ."

From the evidence presented at the hearing on this motion, the trial court found the following facts. In October, 1985, the plaintiff took the parties' minor daughter to Kathleen Kernan, a licensed psychologist,[1]

[1] The daughter attained the age of majority in May, 1987. The plaintiff made no claim for expenses incurred for treatment rendered after the daughter reached majority, and, hence, those expenses are not the subject of this dispute.

because the child was losing weight, looked thin, was emotionally fragile, was easily confused and upset and appeared to be in a state of minor depression. Kernan diagnosed her as being bulimic and, at times, anorexic.[2] She also diagnosed her as having an "adjustment disorder with mixed emotional features." Both bulimia and anorexia can seriously harm bodily functions and, if not properly treated, can be fatal. Kernan specializes in the treatment of bulimia and anorexia.

Part of the recommended treatment of an adolescent who is suffering from bulimia and anorexia is to work with the parents. In December, 1985, Kernan spoke with the defendant about his daughter's problems. Kernan had the impression that the defendant was anxious to help, although he never attended any sessions. During the course of treatment, Kernan held thirty-three individual sessions with the plaintiff, the main purpose of which was to work on stress management in the home, to provide a proper environment for the child and to monitor her progress. Kernan also held sixty-three joint sessions with the plaintiff and her daughter. She also sent bills for nine telephone sessions with the child and for sixteen canceled sessions, two with the plaintiff and fourteen with the child.[3] Kernan also charged $120 for a phone session with the defendant. Kernan sent bills to the plaintiff and, at times, to both the plaintiff and the defendant.

By a note dated April 30, 1986, the plaintiff informed the defendant of Kernan's total charges of $14,295 and requested reimbursement. The defendant has refused to pay for any of the charges, claiming that the ser-

---

[2] Bulimia is a cycle of food binging and purging. Anorexia involves the fear of becoming fat and the avoidance of food.

[3] It was Kernan's policy to charge for a missed session unless she was able to schedule someone else in that time. The total charge for the missed appointments was $1845.

vices rendered by Kernan were not medical expenses, and that he, therefore, has no obligation to pay them.

The trial court, concluded that the expenses incurred for the treatment of the child by Kernan are, in fact, medical expenses within the meaning of the dissolution decree. The court then held the defendant liable for all psychotherapeutic treatment directly and properly related to the child. It held, however, that the defendant was not responsible for payment for the canceled sessions because those charges were not directly and properly related to his daughter's treatment, but, rather, were more in the nature of a penalty. The court also refused to hold the defendant in contempt, finding that his failure to pay arose from a legitimate dispute over the interpretation of the decree and was not, therefore, wilful.

## I

We must first address the defendant's claim that the services rendered by Kernan, a nonmedical doctor, to his daughter are not medical expenses within the meaning of the dissolution decree. We note that there are no Connecticut Appellate or Supreme Court cases on this issue. We agree with the trial court's conclusion that the expenses in question are "medical expenses" within the meaning of the dissolution decree.

## A

We accept the general principle applied by the trial court that, in order to determine whether certain expenses are medical in nature, the court must decide whether the services rendered are a necessary part of the overall treatment of the child. That conclusion comports with the established concept that the practice of medicine is an expansive one. Medicine is "[t]he science of diagnosing, treating, or preventing disease or other damage to the body or mind." American Heritage Dic-

tionary (New College Ed. 1981). In this regard, we cannot accept the defendant's narrow construction of the term "medical expenses."

Other jurisdictions have followed the reasoning that we employ here. See, e.g., *Kahn* v. *Kahn,* 23 Ariz. App. 269, 532 P.2d 541 (1975) (expenses for services rendered by clinical psychologist and psychiatric social worker were held to be medical expenses even though neither was a medical doctor); *Jones* v. *Jones,* 116 Cal. App. 2d 604, 254 P.2d 67 (1953) (bills for eyeglasses held to be medical expenses); *Sulman* v. *Sulman,* 510 So. 2d 908 (Fla. App. 1987) (bills for psychological counseling held to be medical expenses); *Davis* v. *Davis,* 8 Mich. App. 104, 153 N.W.2d 879 (1967) (bills from clinical psychologist held to be medical expenses). The common thread that runs through these cases is the preliminary determination of whether " 'the expenditure was made in connection with the diagnosis, cure, mitigation or prevention of disease or for the purpose of affecting any structure or function of the body or mind.' " The term "medical expense," as used in dissolution decrees, must be interpreted broadly because such decrees generally provide for the maintenance of the former wife and children. *Jones* v. *Jones,* supra, 609. "[C]oncern for a child's mental health is equally as important as the necessities of food, shelter, physical health, and clothing. The proper care and maintenance of the [children] of the parties include tending to [their] emotional and psychological problems as well as to [their] physical problems." *Davis* v. *Davis,* supra, 108.

The trial court here found, from the record before it, that psychotherapy is an appropriate and effective method of treating bulimia and anorexia, both of which can be fatal. There was no evidence presented that there is a better method, or, for that matter, another valid method for the treatment of these disorders. In

light of this evidence, the trial court correctly found that the psychotherapy provided by Kernan was, indeed, a medical expense covered by the dissolution decree. The treatment rendered here was a "necessary part of the overall treatment of the child" and " 'was made in connection with the diagnosis, cure, mitigation or prevention of disease.' " Further, there was no evidence that Kernan was not competent to perform these services. See *Kahn* v. *Kahn,* supra, 273. On the contrary, she was a specialist in this area of treatment.

It is clear from the terms of the decree, which provide for partial payment of all "medical, dental, and orthodontia expenses," that the parties intended the defendant to be financially responsible for any health problems that might arise concerning his children. See *Kahn* v. *Kahn,* supra. The record in this case supports the finding that the effects of bulimia and anorexia may be no less disabling than a physical injury or illness. Cf. *Jones* v. *Jones,* supra, 609 (court, holding a bill for eyeglasses to be a medical expense under the dissolution decree, stated "[d]efective vision may be no less disabling than a physical injury or illness").

We conclude, therefore, that the trial court correctly found that the expenses incurred were medical within the meaning of the dissolution decree even though Kernan was not a medical doctor.[4]

B

The defendant claims that even if the trial court correctly found these expenses to be medical, it should have considered two other provisions in the parties' separation agreement and found that he was not obli-

---

[4] We note with approval the trial court's ruling that the defendant was not in contempt. The trial court fairly found that the defendant's challenge was made in good faith and his behavior was not a wilful disobedience of a court order. See *Sulman* v. *Sulman,* 510 So. 2d 908 (Fla. App. 1987).

gated to pay.[5] In essence, these paragraphs provide that the parties would confer on all important matters relating to the children and that, if either party knew of any circumstances affecting the health or welfare of the children, that party would promptly notify the other.

The defendant acknowledges that compliance with these provisions is not a condition precedent to his obligation to pay medical expenses and also that these provisions were not incorporated into the dissolution decree. He argues, rather, that the plaintiff's failure to notify him promptly of their daughter's problems and her failure to discuss the matter with him indicates that the plaintiff did not consider the problem to be a matter of importance pertaining to the child's health or welfare.

This claim requires little discussion. The trial court found that the psychotherapeutic services rendered by Kernan were a necessary part of the daughter's treatment for possibly fatal disorders. The court further found that the defendant received notice of the treatment within two months after it had commenced and was invited to participate in treatment. The defendant cannot defeat his obligation to pay merely because the plaintiff may not have immediately understood the severity of her child's condition and did not notify him immediately after her first appointment with Kernan.

## C

The defendant next claims that Kernan's assertion of the psychologist-patient privilege pursuant to Gen-

---

[5] Paragraph 3.5 of the separation agreement provides: "The parties shall confer with each other on all major matters of importance pertaining to the children's health, welfare, education and upbringing."

Paragraph 3.7 of the same agreement provides in pertinent part: "[I]f either [party] has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the children, that party shall promptly notify the other party."

eral Statutes § 52-146c should preclude recovery by the plaintiff. He claims that his right to cross-examine was greatly curtailed and that, because of the assertion of this privilege, it was impossible to determine whether Kernan's sessions with the plaintiff alone were related to the daughter or rather to the plaintiff's own problems.

This court will not disturb the action of the trial court unless it has abused its legal discretion. *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 108, 476 A.2d 1074 (1984). " 'In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did.' " Id.

Here, the trial court reasonably concluded from the testimony presented that all thirty-three sessions for which the plaintiff sought reimbursement were properly related to treatment of the child. When Kernan felt that she was dealing with only the plaintiff's problems, she billed those sessions to the plaintiff separately and did not bill them as part of the child's treatment. The court further noted that Kernan was capable of "separating out those sessions [that] were not directly or properly related to [the daughter]."

The trial court obviously found Kernan to be a credible witness. Assessing the credibility of witnesses and determining the weight to be accorded to their testimony is the function of the trial court. *Ottaviani* v. *Pechi,* 16 Conn. App. 705, 708–709, 548 A.2d 1354 (1988); *Jazlowiecki* v. *Cyr,* 4 Conn. App. 76, 77, 492 A.2d 516 (1985). This court will not retry the facts of the case. *Ernst Steel Corporation* v. *Reliance Ins. Co.,* 13 Conn. App. 253, 258, 536 A.2d 969 (1988). The trial court's findings here are supported by the record and are not, therefore, clearly erroneous. Practice Book

§ 4061; *Greene* v. *Greene,* 13 Conn. App. 512, 515, 537 A.2d 537, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988).

## II

The defendant's final claim is that the trial court should not have awarded the plaintiff counsel fees to defend this appeal because he did not have the ability to pay them. Again, we disagree with the defendant.

The plaintiff filed a motion for counsel fees to defend against the defendant's appeal, requesting a sum of $10,000. The trial court awarded the plaintiff $3500 in counsel fees, noting that it had considered the provisions of General Statutes §§ 46b-62 and 46b-82. The court cited *Greene* v. *Greene,* supra, 516–17, as authority for this award.

In *Greene,* we held that "[t]he trial court may, pursuant to General Statutes § 46b-62, award counsel fees to a party in a dissolution action in accordance with [the parties'] respective financial abilities and the criteria set forth in § 46b-82. . . . '[T]he question the court must address is whether the defendant had ample liquid funds to pay counsel fees.' " Id., 516.

We went on to hold that " '[t]he allowance and amount of counsel fees is left to the exercise of judicial discretion, and the availability of funds with which to pay the attorney's fees of the spouse claiming the allowance is not an absolute standard for denying the award. . . .' *Lev* v. *Lev,* 10 Conn. App. 570, 574, 524 A.2d 674 (1987). Further, a posttrial award of attorney's fees to defend an appeal is allowable." Id.

Against these standards we find no abuse of discretion here. Accordingly, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.