LISA NAGY SHEPPARD *v.* STEVENS C. SHEPPARD
(AC 22568)

Lavery, C. J., and Foti and DiPentima, Js.

---

Argued September 16—officially released November 18, 2003

*Edward Kanowitz*, for the appellant (plaintiff).

*George J. Markley*, with whom was *Susan S. Lewis*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Lisa Nagy Sheppard, appeals from the trial court's judgment on her motion for post-judgment modification of child support. On appeal, the plaintiff claims that the court (1) failed to find that the parties' child was autistic when ruling on the motion to modify child support, (2) improperly determined what constituted medical expenses for purposes of calculating the child support order, (3) failed to modify the child support obligation to continue until the child

reaches the age of twenty-one, (4) improperly calculated the amount of child support and (5) failed to award the plaintiff attorney's fees in connection with her defense of a contempt motion. In his cross appeal, the defendant, Stevens C. Sheppard, claims that the court improperly (1) found that he was responsible for paying certain expenses for the child, (2) found that he was in contempt for his failure to pay certain expenses for the child and (3) awarded attorney's fees to the plaintiff in connection with the contempt finding. We affirm in part and reverse in part the judgment of the trial court.

The court found the following facts. The plaintiff and the defendant were married on December 22, 1990, and divorced by a dissolution judgment dated February 22, 1999. Prior to the dissolution, the parties adopted a child who was born on July 26, 1997. The separation agreement, which was incorporated into the dissolution judgment, granted joint legal custody of the child with residential custody to the plaintiff mother and "liberal and reasonable visitation" to the defendant father. The court also ordered that the defendant pay child support in the amount of $150 per week.

The child has special needs, which both parties were aware of at the time of the dissolution. The child has serious food allergies, some sensory issues and some alleged physical problems. The plaintiff insists that the child is autistic, but the defendant disagrees, and the court stated that it could not make such a finding absent proper medical testimony.

On March 10, 2000, the plaintiff filed a postjudgment motion to modify child support, claiming that the defendant's financial situation and the child's medical condition had changed since the dissolution judgment. The plaintiff further claimed that the defendant was not paying child support in accordance with the agreement

and filed a motion for contempt on June 28, 2000. In its memorandum of decision,[1] dated August 24, 2001, the court ordered the defendant to pay (1) child support in the amount of $250 per week, (2) half of all unreimbursed and uninsured medical expenses incurred until the child reaches the age of nineteen or graduates from high school, whichever occurs first, and (3) $7500 in attorney's fees as a sanction for a finding of contempt for his "wilful failure" to pay half of the child's unreimbursed or uninsured medical costs. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

## APPEAL

We begin by setting forth our standard of review for claims challenging a child support order. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 480, 808 A.2d 688 (2002).

I

The plaintiff first claims that the court improperly failed to find that the child was autistic, which she argues would constitute an adequate change in circumstances pursuant to General Statutes § 46b-86[2] to allow

---

[1] The August 24, 2001 memorandum of decision also addressed other motions that are not the subject of this appeal.

[2] "General Statutes § 46b-86 governs the modification of a child support order after the date of a dissolution judgment. . . . [A] child support order cannot be modified unless there is (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines [in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies] absent the requisite findings. . . . The party seeking modification bears the

for a greater modification of the child support order. Specifically, the plaintiff argues that (1) the doctrine of collateral estoppel should apply because the issue of autism was decided in a prior hearing and (2) alternatively, sufficient evidence was presented in the hearing on the postjudgment motion to modify child support to support a finding that the child is autistic. We do not agree.

The following additional facts underlie those issues. On March 30, 2000, the defendant filed a motion for contempt, claiming that the plaintiff denied him visitation on several occasions, including a scheduled visit in which he was to take the child to an out-of-state family reunion. The plaintiff's defense to that motion was that the child was autistic and unable to fly to, or take part in, the family reunion. The court ordered that the defendant not take the child to the reunion, but, as an alternative, provided the defendant with extra visitation.

## A

The plaintiff first claims that the court, in ruling on the defendant's motion for contempt, found that the child is autistic and that under the doctrine of collateral estoppel, the court hearing the postjudgment motion to modify child support was required by law to find the same. We do not agree.

Collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." (Internal quotation marks omitted.) *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 325, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003). We do not agree with the plaintiff's claim because the court, in ruling on the defendant's

burden of showing the existence of a substantial change in the circumstances." (Citation omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173–74, 829 A.2d 885 (2003).

motion for contempt, never made an explicit finding that the child is autistic. The court merely ordered that the defendant not take the child to the scheduled family reunion. As such, absent an actual ruling on the issue by the court, we cannot conclude that the doctrine of collateral estoppel applies under those facts.[3]

## B

Alternatively, the plaintiff claims that she presented sufficient evidence to the court hearing her postjudgment motion to modify child support to support a finding that the child is autistic. We do not agree.

"When a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice." (Internal quotation marks omitted.) *Monterose v. Cross*, 60 Conn. App. 655, 658, 760 A.2d 1013 (2000). Furthermore, expert medical testimony is "generally required in proving the condition from which a person claims to be suffering . . . ." *State v. Orsini*, 155 Conn. 367, 372, 232 A.2d 907 (1967).

Here, the plaintiff did not provide expert medical evidence to support her claim that the child is autistic. The plaintiff argues, however, that expert testimony is not required where the medical condition is obvious or common in everyday life and cites *State v. Orsini*, supra, 155 Conn. 367, in support. Although the plaintiff cites the correct law, we do not find that the facts presented here coincide with the situations contemplated in *Orsini*. In *Orsini*, the court considered "obvious" or "common" medical conditions to include, for example, pregnancy or amputation. Id., 372. Autism,

---

[3] The plaintiff also argues that the finding of autism was implicit in the court's ruling because it was her defense to the motion for contempt. Our review of the record, however, reveals no evidence that the court based its decision on such a fact, implicit or otherwise, and, therefore, the plaintiff's argument is without merit.

however, does not fall into that category because a layperson would not be able to make such a determination, as could be done with a pregnant woman or an amputee. The court, therefore, properly declined to conclude that the child was autistic absent expert testimony.

## II

The plaintiff next claims that the court improperly construed the meaning of "medical expenses" under the separation agreement in determining what expenses the defendant must pay. Specifically, the plaintiff argues that the court set forth no definable or reasonable standard for its conclusions. We do not agree.

The plaintiff's argument centers on the notion that the court did not understand the purpose of certain expenditures. Specifically, the plaintiff contends that because the court did not find that the child is autistic, it incorrectly determined that the defendant did not have to pay for certain expenses. For the reasons previously set forth as to why the court was not incorrect in declining to find that the child is autistic, we conclude that the plaintiff's argument that the defendant should pay for certain expenses must fail. The plaintiff provided no expert medical testimony as to the child's condition and what expenses were needed to treat that condition. We therefore conclude that the court did not abuse its discretion in determining what constituted medical expenses pursuant to the separation agreement.

## III

The plaintiff next claims that the court failed to modify the child support obligation pursuant to General

Statutes § 46b-84 (c)[4] to continue until the child reaches the age of twenty-one. Specifically, the plaintiff again contends that the court should have found that her child is autistic, thus satisfying § 46b-84 (c). Alternatively, the plaintiff argues that even if an actual finding of autism is not made, she has presented sufficient evidence to prove that the child has a mental or physical disability, as defined in General Statutes § 46a-51 (15)[5] and required by § 46b-84 (c). We do not agree.

For the same reasons previously discussed as to why the plaintiff did not proffer the proper evidence to support her claim regarding the child's medical condition, we cannot say that she has satisfied § 46b-84 (c). The plaintiff did not provide expert medical testimony to support her claim that the child suffers from autism or from any other medical condition satisfying § 46b-84 (c). Without such evidence to support her claim, we cannot conclude that the court was incorrect in not modifying the child support obligation to continue until the child reaches the age of twenty-one.

IV

The plaintiff next claims that the court improperly calculated the amount of child support. Specifically, the plaintiff argues that the court, in calculating the child support, (1) improperly allowed the defendant to deduct for travel expenses, (2) did not consider the defendant's potential investment income and (3)

[4] General Statutes § 46b-84 (c) provides in relevant part: "The court may make appropriate orders of support of any child with . . . a mental disability or physical disability, as defined in subdivision (15) of section 46a-51, who resides with a parent and is principally dependent upon such parent for maintenance until such child attains the age of twenty-one. . . ."

[5] General Statutes § 46a-51 (15) defines "physically disabled" in relevant part as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device . . . ."

improperly excluded trust income from the defendant's gross income. We will discuss each of the plaintiff's arguments in turn.

## A

The plaintiff first claims that the court improperly included travel expenses in calculating the defendant's gross income for purposes of the child support guidelines. We do not agree.

The child support guidelines provide for deductions for extraordinary parental expenses, including "job-related unreimbursable employment expenses of individuals who are not self-employed . . . ." Regs., Conn. State Agencies § 46b-215a-3 (b) (3) (B). The defendant, in his financial affidavit and child support guidelines worksheet, deducted travel expenses from his gross income for travel from his home in Connecticut to his job[6] in New York City. Although travel expenses are not always an allowable deduction under the child support guidelines, we cannot conclude that the court abused its discretion in allowing that deduction under the particular facts of this case when the defendant worked in New York, but lived closer to his child in Connecticut.

## B

The plaintiff next claims that the court improperly excluded the defendant's potential earnings from the child support calculation. Specifically, she argues that the defendant could have had a greater return on his investment account by reinvesting the funds. In support of her contention, the plaintiff presented the testimony of an alleged expert to testify as to the earning potential of the defendant's funds. The court did not find that testimony credible and consequently did not find sufficient evidence to support the plaintiff's claim that the defendant could earn a greater return on his money.

[6] The defendant is not self-employed.

The plaintiff now claims that the court improperly disregarded the witness' testimony and consequently reached an inaccurate conclusion. We do not agree.

"The acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court. . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . . It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . ." (Internal quotation marks omitted.) *Evans* v. *Taylor*, 67 Conn. App. 108, 113, 786 A.2d 525 (2001).

Here, the court stated that the "witness was not licensed in this state as an investment adviser and considered only one financial affidavit and two years' tax returns." As a result, the court was well within its discretion to accept or reject the witness' testimony as the truth. We therefore do not conclude that the court was incorrect in not modifying the child support obligation to reflect the defendant's alleged potential income.[7]

## C

The plaintiff next argues that the court improperly excluded the defendant's trust income from the child

[7] The plaintiff also argues that the court allowed an improper calculation of the defendant's income tax and social security expenses. In support of that claim, the plaintiff provided the testimony of the same alleged expert witness who testified relative to her claim regarding the defendant's investment account. As already discussed, the court did not find that testimony credible. As a result, the court reasonably could have found that the calculations were correct. Consequently, for the same reasons previously set forth, we cannot conclude that the court abused its discretion in calculating the defendant's income tax and social security tax expenses.

support calculation. The following additional facts are relevant to our resolution of that issue. Under the June 3, 1971 will of the defendant's mother, Jane S. Sheppard, a trust was established for the defendant. The uncontroverted evidence reveals that there had been no distribution of accumulated income in the trust fund from Jane Sheppard's death until March 11, 1999, at which time the defendant's interest was $143,047. A trustee testified that the defendant had no control over the trust. In fact, the will gave the trustees absolute discretion to distribute the trust funds. The plaintiff now claims that the court improperly excluded the trust income from the defendant's gross income, which was used in the child support calculation. We do not agree.

The child support guidelines define gross income in relevant part as the "average weekly earned and unearned income from all sources before deductions . . . ." Regs., Conn. State Agencies § 46b-215a-1 (11). Although the guidelines further provide that gross income includes "estate or trust income;" id., § 46b-215a-1 (11) (A) (xiii); we cannot conclude that all funds derived from an estate or trust qualify under that definition. That is especially true when the income stream is not regular or predictable. Here, the court found that the distributions under the trust were irregular in their amounts and in their timing, and were beyond the defendant's control. Furthermore, the language of the will provides that the trustees are empowered to make distributions at their "absolute discretion." It is improper, therefore, to include those funds in the defendant's gross income, which could result in higher support payments, when those funds may not actually be distributed.

Furthermore, the separation agreement provides that the "parties hereby and forever mutually agree to waive their individual claims, rights, and interests by way of alimony, and or property distribution to any inheritance

received or to be received in the future by the other party." Although the plaintiff is asking the court to include the trust funds in the defendant's gross income and not claiming an actual interest in the trust, to include the funds in gross income would appear to achieve the same goal that the separation agreement clearly forbids. The parties intended not to have an interest in each other's inheritance, and we must uphold that intent. See *Bonhotel* v. *Bonhotel*, 64 Conn. App. 561, 564, 781 A.2d 318, cert. denied, 258 Conn. 918, 782 A.2d 1241 (2001).

For the reasons previously discussed, we conclude that the court did not abuse its discretion in determining that the trust income need not be included in the defendant's gross income for purposes of calculating the child support order.

V

The plaintiff last claims that the court did not rule on her claim for attorney's fees in connection with the defendant's motion for contempt, filed March 30, 2000.[8] Specifically, she argues that she is entitled to attorney's fees in what she claims to be a successful defense of the defendant's motion for contempt.[9]

"It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999).

---

[8] The defendant does not challenge the timeliness of the claim.

[9] The defendant's motion for contempt, filed March 30, 2000, claimed that the plaintiff was in violation of the separation agreement by not allowing the child to attend an out-of-state family reunion with the defendant.

. Here, the court's memorandum of decision does not specifically address the plaintiff's claim for attorney's fees with respect to the defendant's motion for contempt. If the plaintiff believed that the court did not address that claim, she could have filed a motion for articulation; see Practice Book § 66-5; but she failed to do so. The appellant bears the burden of furnishing this court with an adequate record to review her claim. Practice Book § 61-10. Accordingly, because the plaintiff failed to make such a motion, we must take the court's decision as properly defining the scope of the claims she presented. "Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Collic*, supra, 55 Conn. App. 209. We therefore decline to review that claim.

## CROSS APPEAL

On cross appeal, the defendant claims that the court improperly (1) found that he was responsible for paying certain expenses for the child, (2) found that he was in contempt for his wilful failure to pay certain expenses and (3) awarded attorney's fees to the plaintiff in connection with the contempt finding.

The following additional facts are necessary for our resolution of those issues. Under the parties' separation agreement, the defendant is responsible for half of all unreimbursed or uninsured costs[10] incurred for the benefit of the child after the date of dissolution. The agreement further provides that "no psychiatric or psychological or orthodontia or occupational therapist, allergist, nutritionist or physical therapist expenses or

---

[10] Those expenses include "reasonably necessary medical, optical, surgical, or hospital care, treatment which shall include any occupational therapist, allergist, nutritionist or physical therapist and the cost of prescriptive drugs ("Medical Expenses") and dental and orthodontia expenses . . . ."

elective surgery or treatment shall be incurred without the prior mutual consent of the parties, which consent shall not be unreasonable withheld."

In its memorandum of decision, the court found the defendant in contempt for his "wilful" failure to pay various "medical expenses," including those for Neocate, the child's milk substitute. The court further found that the plaintiff was "not required to obtain the defendant's prior consent before incurring the 'elective' expense of an occupational therapist . . . ." Despite the clear language of the separation agreement requiring such consent, the court stated that "to impose upon the plaintiff the burden of securing his consent to incur such expenses as are reasonably medically necessary for [the child's] care and treatment is antagonistic to [the child's] well-being and is potentially fatal."

I

The defendant first claims that the court improperly found that he was responsible for paying certain expenses for the child. Specifically, the defendant argues that the court (1) improperly found that the plaintiff could incur certain expenses without his consent, despite the terms of the separation agreement and (2) improperly found that the cost of Neocate was a medical expense.

A

The defendant claims that the court improperly found that the plaintiff could incur certain expenses for the child without his consent, despite the terms of the separation agreement. We agree.

"The agreement of the parties executed at the time of the dissolution was incorporated into the judgment and is a contract of the parties. . . . The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement

is unambiguous within the four corners of the instrument. . . . [T]he construction of a written contract is a question of law for the court. . . . The scope of review in such cases is plenary." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

Here, the separation agreement, which was incorporated into the dissolution judgment, clearly and unambiguously stated that "no psychiatric or psychological or orthodontia or occupational therapist, allergist, nutritionist or physical therapist expenses or elective surgery or treatment shall be incurred without the prior mutual consent of the parties, which consent shall not be unreasonably withheld." Despite that language, the court made a finding that the defendant's consent is not required before incurring the expense of an occupational therapist. That conclusion is in direct conflict with the clear language of the separation agreement. "[A]lthough one may sympathize with the position in which the plaintiff finds himself the fact remains that by the separation agreement he made his bed and now must lie in it." (Internal quotation marks omitted.) *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 598–99, 602 A.2d 1056 (1992). Consequently, we conclude that the clear language of the separation agreement requiring the defendant's consent and prohibiting the unreasonable withholding of that consent must prevail. We therefore reverse the court's decision that consent need not be obtained prior to incurring such expenses.

B

The defendant next argues that the court improperly found that he was responsible for half of the unreimbursed or uninsured cost of Neocate. We do not agree.

"We accept the general principle . . . that, in order to determine whether certain expenses are medical in nature, the court must decide whether the services rendered are a necessary part of the overall treatment of the child. That conclusion comports with the established concept that the practice of medicine is an expansive one. Medicine is [t]he science of diagnosing, treating, or preventing disease or other damage to the body or mind." (Internal quotation marks omitted.) *Bucy* v. *Bucy*, 23 Conn. App. 98, 101, 579 A.2d 117 (1990). Furthermore, "[t]he term 'medical expense,' as used in dissolution decrees, must be interpreted broadly because such decrees generally provide for the maintenance of the former wife and children." Id., 102.

Here, the court found, from the record before it, that the child suffers from potentially fatal allergies, and that Neocate is essential to the child's growth, sustenance, development and well-being. Consequently, the court concluded that despite the fact that Neocate is not a prescription drug, it is still a "reasonably necessary medical expense" under the terms of the separation agreement. In light of the evidence, we conclude that the court correctly found that Neocate is a medical expense covered under the separation agreement.

Additionally, it is clear from the language of the separation agreement, which provides for partial payment of "medical expenses," that the parties intended the defendant to be financially responsible for the health problems that may arise with the child. We therefore conclude that the record in this case supports the court's determination that the defendant is responsible for half of the unreimbursed or uninsured cost of Neocate.

## II

Last, the defendant claims that the court improperly found him in contempt for his failure to pay child sup-

port and improperly award the plaintiff attorney's fees in connection with the contempt finding. We agree.

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001). A finding of contempt "must be established by sufficient proof that is premised upon competent evidence presented to the trial court . . . . We will reverse that finding only if we conclude the trial court abused its discretion." (Internal quotation marks omitted.) *Detels* v. *Detels*, 79 Conn. App. 467, 470, 830 A.2d 381 (2003).

Here, the facts do not support a finding that the defendant's conduct was wilful.[11] As previously discussed, we conclude that not only was the defendant's failure to pay certain expenses not wilful, but he also was correct in his contention that the plaintiff could not incur certain expenses without his consent. Furthermore, even though we are holding that the defendant is responsible for half of the unreimbursed or uninsured cost of Neocate, we cannot conclude that he wilfully failed to pay for the Neocate. Because Neocate was not expressly listed in the separation agreement, nor is it a "prescription drug," the court could not reasonably have concluded that the defendant's failure to pay that expense was wilful. The defendant had a legitimate, although not successful, dispute relative to his responsibility for the cost of Neocate. We conclude that the court improperly found the defendant in contempt and,

[11] The defendant also contends that several expenses, which the court found he was required to pay, were in fact paid by the defendant. The plaintiff originally had given the defendant a credit of only $166.57 for medical expenses, but she later confirmed that the credit should have been $1668.57. The defendant argues that the court based its finding of contempt partially on that misinformation. We conclude that this further supports our decision to reverse the court's judgment holding the defendant in contempt.

therefore, improperly awarded attorney's fees to the plaintiff in connection with that finding.[12]

The judgment is reversed on the cross appeal only as to the findings that the defendant's consent need not be obtained prior to incurring certain medical expenses, that he was in contempt and as to the award of attorney's fees in connection with the plaintiff's motion for contempt. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[12] The plaintiff asserts that the defendant's failure to pay an allergist's bill and co-pays further support the court's conclusion that the defendant was in contempt. For the reasons previously set forth, including the language of the separation agreement and the defendant's legitimate, although not successful, contentions relative to his obligations, we conclude that the defendant's conduct was not wilful and, therefore, does not support a finding of contempt.